UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In re: :

ENERGY FUTURE HOLDINGS CORP., : Chapter 11

et al., : Case No. 14-10979

Debtors. : (Jointly Administered)

______________________________:

United States Bankruptcy Court

824 North Market Street

Wilmington, Delaware

July 9, 2020

10:00 AM

B E F O R E :

HON CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

ECRO OPERATOR: UNKNOWN

HEARING re Motion for Request for Relief Filed by the Tremble Family [D.I. 14071; filed May 29, 2020]

Transcribed by: Sonya Ledanski Hyde

A P P E A R A N C E S :

RICHARDS LAYTON & FINGER, P.A.
Attorneys for the TCEH

BY: JASON M. MADRON

SHARON DONALDSON - Appearing Pro Se
SELIA SHAWKEY - Appearing Pro Se

ALSO APPEARING TELEPHONICALLY:
GEORGE P. ANGELICH
BETH BROWNSTEIN
D. DAVID COHEN
JEFF DARDARIAN
JASON GIBSON
JON E. JACKS
JUSTIN KESSELMAN
JOHN MALONE
CHRISTIAN MCBURNEY
R. STEPHEN MCNEILL
JAMES E. O'NEIL
JEREMY W. RYAN
BRIAN RYNIKER
JACKSON TOOF

LEONARD TRIVIGNO

WILMER TREMBLE

P R O C E E D I N G S

THE COURT: Good afternoon, or happy noon, or good morning, depending on where you are. This is Judge Sontchi. We are here for the Energy Future Holdings case today and the motion brought by the Tremble family. We are proceeding remotely, of course, due to the coronavirus. So I have a few announcements about that before we begin.

All of the audio is by CourtCall, which is the telephone. Importantly, because it's by telephone, it is important if you have the ability to do so to mute your phone when you're not speaking so that we can avoid background noise and have a clean recording, which is what we use to have a transcript.

This is particularly important if you're on a cell phone or a speakerphone like I am, or even if you're using earbuds because we get a lot of background noise with that equipment. Of course muting your phones is great. Try to remember to unmute your phones when you speak. I am particularly bad at that, so I try to remember. But please unmute your phones when you speak.

Also when you do speak, if you could identify yourself so we know who you are for the record. If we're having a colloquy back and forth, obviously you don't need to identify yourself every time you speak. But when you start, if you could identify yourself. And if there's some

sort of break and you come back in again and you could identify yourself, that would be very helpful.

Only Mr. Madron is on Zoom, which is fine. So I won't go through all of the normal Zoom instructions since he knows those as well as anybody.

So just for organizational purposes, I know it's not his motion, but just for organizational purposes, I'll turn it over to Mr. Madron to set up the hearing. Mr. Madron?

MR. MADRON: Good afternoon, Your Honor. For the record, Jason Madron of Richards, Layton & Finger on behalf of reorganized TCEH. Your Honor, we are before the Court this afternoon with a one-item agenda. And that would be the Tremble family's present motion, which can be found at docket item number 13331. It has been styled as a motion for stay relief.

Your Honor, the reorganized TCEH did file a timely objection to this motion last week, on July the 1st. Happy to present the reorganized company's objection, but I will be happy to also yield in the first instance to any members of the Tremble family that may be joining us by telephone today to present their motion. And then I'm happy to respond in due course.

THE COURT: Yes, I would like to proceed that way. Thank you, Mr. Madron.

I know I have Ms. Donaldson on the line, who I think is the spokesman. But whoever would like to speak on behalf of the Tremble family, now is the time.

MS. DONALDSON: Good afternoon, good morning, gentlemen. This is Sharon Tremble-Donaldson. I am actually looking to proceed on behalf of our family. My sister, Selia Tremble Shawkey, actually is to be the lead. So if you would please bear with me. I don't know exactly what has happened with her, but I will do my very best.

My understanding is that we have been objected to in reference to our request. And with that being the case, there are just a few things that I would like to point out.

First of all, we were officially added to the bankruptcy on January 7th of 2015. And that was after the actual date, which I believe was April 29th, 2014. With that being said, the attorneys for Luminant Mining as well as Energy Future Holdings, were responsible for adding us to the case at that time. So the fact that it was after the bar date did not have anything to do with us directly. We were responding to what those attorneys had done as of that January 7th date. And we did present our proofs of claim as well as a packet of information in reference to the situation and what we had gone through legally with Luminant Mining.

Now, we did then eventually -- we got into the

bankruptcy. Then we had -- the stay was lifted by Energy Future Holdings' request. And as a result, we went to the Court of Appeals. We lost in the Court of Appeals. We then appealed to the Texas State Supreme Court.

Now, at that time we received a letter from Jackson, Sjoberg, McCarthy & Townsend, LLP. And the letter said, pursuant -- excuse me. "Dear Mr. Hawthorne. Pursuant to Texas Rule of Appellate Procedure 53.3, Respondent, Luminant Mining Company LLC hereby waives the filing of a response to the petition review filed by Wilmer Forrest Tremble, Jr., Sharon Tremble-Donaldson, Selia Tremble-Shawkey, and Billy J. Tremble in the above-referenced cause." So in that situation, it was Luminant Mining that chose not to respond.

We then came back to the bankruptcy court, and now we sit. We were then advised that it is Energy Future Holdings that wants to expunge and disallow our claim, and that then would not be a legal precedent that they would be able to take. And that is because we are a secured creditor.

We have spent time over the years making certain that we secured our property. And in spite of all of what we have done, that company, Luminant Mining, still proceeded onto our property, they've taken produce off of our property, they tore down the homestead that was on the

property, as well as the barn and everything else.

We then have not been compensated for anything that was done. So there has been a travesty of justice in this entire situation. Now, what I am aware of, and that is White Transportation. This means in that particular case that a secured creditor cannot be stripped of its lien under Section 1141(c), even if received notice of a Chapter 11 case, and deliberately ignores the case plan as a plan process unless the creditor actively participates in the case by, among other things, filing a proof of claim.

The ruling then signals that in the Fifth Circuit, absent participation by the secured creditor, a plan proponent will not be permitted to modify or avoid the creditor's lien solely through the plan confirmation process, but instead will be required to affirmatively object to the secured claim or initiate an adversary proceeding to challenge the lien. That has not been done.

Our claim is a secured claim in that particular case. The company then did win because a secured creditor is indeed secured. And that secured status cannot be taken away. Secured creditors may choose to take no action during a Chapter 11 case without hazarding lien stripping.

And there was also something within the information sent that said that we have not come before the Court in a three-and-a-half-year period. Well, that is

incorrect. Back in January of 2018, we did come before the Court. And Mr. Jason Madron, he was then the party that we talked with or that we combatted with in reference to our situation as secured creditors.

And I rest in that there should be no stripping of our secured creditor status, nor our request that we have made to receive some of our funding if not all of our money in this case.

THE COURT: All right. Thank you very much, ma'am. I truly appreciate it.

Mr. Madron, if you could respond. And I'd like you to pay particular attention to the assertion of a secured claim in this instance, which, I have to admit, I was not aware of.

MR. MADRON: Your Honor, I'm happy to do so. I think it would be helpful for the Court -- and I'm happy to clarify a few of the comments made by the representative of the Tremble family about some of the things rolled into the bankruptcy or notices, things of that nature.

So just by way of background, Your Honor, the Tremble party's present motion -- by way of background to the motion, on July 30th of 2018, the Tremble parties filed a one-page letter with the court as a "request for disbursement and compensation of funds owed to the Trembles and asking for an immediate release of funds."

On September 18th, 2018, the EFT Plan Administrative Board filed a written objection to the Tremble's July 30th letter. That's on the docket at docket item 13495. The PAB's September 18th filing pointed out that the Tremble family filed four proofs of claim in the Debtor's Chapter 11 cases approximately three-and-a-half years after the general bar date. These are the proofs of claim attached to our current response to the Tremble's motion that we're talking about today, and they can be found at Exhibit E1 through E4 to our response. These claims are what I believe Ms. Tremble is referring to as their purported secured claims. I believe they were filed in the magnitude of $20 billion. And the box I believe was checked on each of the four claims asserting secured status.

Your Honor, however, all of these claims have previously been disallowed and expunged by operation to confirm E-side Chapter 11 plan in these Chapter 11 cases upon the effective date.

Notwithstanding the Tremble's historical connection with the Debtors appears to have been on T-side all four of the claims were filed in the lead case of Energy Future Holdings Corp., hence the reason why the PAB, as compared to the organized TCEH, responded to the July 30th letter acting as the fiduciary of the E-side estates.

Thereafter, Your Honor, on September 28th, 2018,

this Court entered its order at docket item 13532, whereby the Court adopted the PAB's argument set forth in its September 18th response in full and denied the Tremble family any relief in connection with its July 30th letter request.

Thereafter, on October the 2nd, 2018, the Tremble family filed an untimely reply to the PAB's objection, which can be found on the docket at docket item 13543.

On October 3rd, 2018, this Court entered an amended order at docket 13544 rejecting the arguments raised by the Tremble family in the reply and fully reiterating its denial of any relief to the Trembles.

On May 29th, 2020, the Tremble parties filed the instant motion pending before the Court which, as I mentioned before, is styled as a motion for stay relief. By their May 29th filing, the Tremble family seeks relief from this Court in order to exercise remedies with respect to certain collateral. The May 29th filing makes reference to the Tremble family's long disallowed and expunged proofs of claim. And these are the four claims that Ms. Tremble was referencing that they have asserted as secured claims and seeks relief concerning the retrieval of funds.

Put differently, Your Honor, the Tremble party's most recent filing simply appears to repackage the same request that was made in their July 30, 2018 letter filed

with the Court seeking a recovery from the Debtors based on their disallowed and expunged proofs of claim, a request that was roundly rejected by the Court twice back in 2018.

As we discussed in our papers, the Tremble family has a history of prepetition litigation with certain of the Debtors. And I think this will clarify some of the comments that Ms. Tremble made.

First, the Tremble parties were named defendants in certain partition suits that were filed by Luminant Mining Corporation -- excuse me, Luminant Mining Company LLC, one of the TCEH debtors in the Ross County District Court in Texas. This was a prepetition suit. Luminant prevailed in the partition suits, and the Tremble party's appeals therefrom were all successful.

I believe when Ms. Tremble was saying that she received a letter that Luminant was choosing not to respond, you know, a judgement was entered in favor of Luminant at the trial court level. There was an appeal taken as a matter of right to an appellate court. The appellate court confirmed. And then there was what is basically analogous to a petition for writ of certiorari to the Texas State Supreme Court of the -- at the district of the circuit court level. And as is often the case with Supreme Court practice and the federal courts, parties often elect to not file a response to a petition for writ of certiorari, and that was

the case here.

Also prior to the petition date, Your Honor, and this will clarify another point, the Tremble parties have also commenced a civil action against Luminant and EFH, along with certain unnamed subsidiaries of EFH. This litigation where the Tremble parties were the plaintiffs was also filed against the debtor entities in the Ross County District Court.

The Tremble party's lawsuit was stayed following the petition date and ultimately dismissed for want of prosecution. As we noted in our response papers, the dismissal order of that lawsuit was not appealed and was long ago final and unappealable.

I think here, Your Honor -- and this relates to Exhibit C to our response -- it was in January of 2015 if memory serves that Luminant's counsel in the state court action that was defending the litigation that the Tremble parties had commenced against Luminant, EFH, and unnamed EFH subsidiaries filed a notice of suggestion on pendency of bankruptcy in the Ross County action to stay the matter. So that notice of suggestion was served on the Tremble parties.

THE COURT: So if the suit was stayed by the automatic stay and then notwithstanding that it was stayed by the automatic stay was dismissed of lack of prosecution?

MR. MADRON: I think was happened logistically,

Your Honor, the lawsuit was pending in January of 2015. Local counsel in Texas filed the notice of suggestion on pendency of bankruptcy. In response to that, the trial court in Texas stayed the matter. And then ultimately after a period of years I believe -- I think it may have been a couple of years -- it was just dismissed for wont of prosecution.

THE COURT: (indiscernible).

MR. MADRON: And again -- yeah. That order, we also attached that order to our response.

THE COURT: I know.

MR. MADRON: That order was not appealed as well.

Your Honor, as reorganized TCH notes in its objection, the Tremble parties received comprehensive notice of the general bar date and of both the T-side and the E-side plan processes. Notwithstanding all of the notice afforded to the Tremble parties throughout the Debtor's Chapter 11 cases, approximately three-and-a-half years after the general bar date did certain of the Tremble parties file what were numbered proofs of claim 37811, 37810, 37809, and 37808. By operation of Article 7F and Article 7G of the T-side or E-side plan as applicable, these untimely claims were disallowed and expunged on the effective date of the applicable plan. And why I say it's applicable, because these claims were lodged in the main case, 1410979. So they

were deemed on the claims register as being lodged against Energy Future Holdings Corp. The proof of claim itself, if you look at them, Your Honor, in the dialogue of only one case number is listed. In the dialogue box it is written that it's asserted against I believe -- I don't have it in front of me, but I think it's Luminant, EFH, et cetera. But it was only lodged in the one case.

But either way, whether it was lodged against Luminant or EFT or both, Article 7F and G of the T-side and E-side plans are very closely aligned as far as the language that it uses to disallow and expunge untimely claims automatically upon the plan effective date.

In addition, Your Honor, Article 8A of each of the T-side and E-side plan as applicable contain a broad discharge injunction that prevents the Tremble parties from seeking recovery from any of the EFH debtors, whether on the T-side or the E-side on account of any alleged prepetition claims.

Finally, Your Honor, as I've noted before, this Court has already ruled against the Tremble parties in two separate orders entered in 2018 with respect to the very relief they are again requesting and their most recent motion now pending before the Court. In that regard, the Court's 2018 orders, both of which are long final and unappealable, have already denied the substance of the

Tremble party's request before the Court today under the law of the case and cannot impermissibly be collaterally attacked by the Tremble parties now.

In conclusion, Your Honor, the Tremble parties, we would submit respectfully, hold no enforceable claims against or (indiscernible) entitlement to any property from any of the debtors. The Tremble claims have long ago been disallowed and expunged and any potential claims of the Tremble parties against any of the Debtors are discharged by operation of the Debtor's confirmed and effective plans, of which the Tremble parties had comprehensive notice. And the Tremble parties' prepetition lawsuit against certain of the debtors was long ago dismissed. Put differently, there is no pending civil litigation against any of the debtors by the Tremble parties with respect to which this court could even consider modifying the automatic stay.

Moreover, Your Honor, this Court's 2018 order is already adjudicated, that the Tremble parties are not entitled to any property, funds, distributions, or compensation of any kind from any of the debtors. And as a result of the foregoing, Your Honor, reorganized (indiscernible) request that the Court deny the Tremble parties' pending motion in full.

And the only other comment I'll make on the secured point. Ms. Tremble made reference to a hearing

where there was an argument. I believe it was in January of February of 2018. I believe, if memory serves me, Your Honor, the Tremble parties had filed an objection to a motion of the debtors to extend the deadline to remove civil actions. And they filed an objection to that, and I appeared at a hearing in front of Your Honor where one of the members of the Tremble family also appeared by telephone and argued that. And again, I'd have to look back at the transcript, but I believe I pretty much raised the same argument. But the motion really didn't affect the Tremble parties. They were not, to the reorganized debtor's knowledge, a current counterparty to any pending litigation against any of the debtors in any court. And Your Honor obviously granted that motion to extend time over the Tremble parties' objection.

I believe that is the reference to the January or February 2018 argument that was previously had in these cases. I do not believe that I personally argued the September 2018 letter that we respectfully submit that the current request before the Court is really a repackaging of.

So I'm happy to answer any questions Your Honor has. But otherwise, we would respectfully request that the motion be denied.

THE COURT: All right. Just give me a minute. I want to look at something, and then I might have a question

for you, Mr. Madron.

MR. MADRON: Very good, Your Honor.

THE COURT: Because we're all electronic here, I'm looking at a computer. That's why I'm looking away from you.

MS. SHAWKEY: Judge Sontchi?

THE COURT: Yes.

MS. SHAWKEY: This is Selia Tremble-Shawkey. And I am objecting to his (indiscernible) motions in reference to the Tremble family and how we were actually put in this bankruptcy. We were put in the bankruptcy on January 7th, 2015 by the company. The company and an attorney by the name of David Jackson. We did not put ourselves in this bankruptcy.

On 10/23/2015, okay, we also received the voting rights in the bankruptcy (indiscernible) plan. We were contacted. We received all of the information. We received a CD-ROM informing us that we were in the bankruptcy and we were put in it by Luminant, Energy Future Holdings, and its subsidiaries. Okay?

And when he's talking about the Supreme Court, he's talking about all those issues, those were moot issues because they did not have anything to do with the said bankruptcy. That was a situation that was going on in the district court of Ross County that had to do with Ross

County and Luminant Energy Future Holdings and all of them attempting to sell our land without our commission. They did an illegal option trying to sell the land saying that we were no longer entitled to our land. That's what that was about.

I am not here -- everything he's saying -- anything he said actually, whether the Supreme Court, any of that had anything to do with this actual bankruptcy. Because like I said, they put us in the bankruptcy. We did not. When we filed to get -- we had to file to get a list of estates so that we could go to finish up work and everything that had to do with our land situation. It had nothing to do with the minerals that is under the ground. They were the ones looking for the minerals under the ground. We had additional contact with David Jackson, his group, trying to work out some kind of agreement so that we could try to sell something on the land and try to do something and compromise with each other. That is what actually happened.

Like I said, I'm not sure why he's bringing all that up into this bankruptcy because it has nothing to do with that. It has to do with when we filed suit on them, they turned around and did not want to go back to court. The reason why the Supreme Court situation was dropped is because David Jackson and Luminant, representing the

Luminant Energy Future Holdings subsidiaries, decided that they did not want to go any further in that particular court action. That is exactly what happened.

And we filed all of our paperwork. We had everything in to the court. And when we were in court, with you and with -- I believe his name was Jason Madron. When we were in court with you and we all were testifying, he was trying to bring that information back up. And you told him that that was not appropriate at that time because that was not what we were doing.

And so now I don't know if there's any other information that anyone else needs. But the Tremble family are entitled to be paid. They are entitled. Because like I said, we did not start any of this, they did. And we have gone and we've done everything we could to protect our property and to protect what we were going through when we filed the suit against them. But when we were going through, like I said, all the Supreme Court, all the appellate courts had nothing to do with the bankruptcy information. It had to do with fighting over our land.

THE COURT: Okay. Thank you, ma'am. I appreciate it.

MS. SHAWKEY: Thank you.

THE COURT: That was Ms. Shawkey?

MS. SHAWKEY: Yes. Selia Tremble-Shawkey.

THE COURT: Okay, thank you.

MR. MADRON: Your Honor, may I briefly respond?

THE COURT: Give me just a minute, Mr. Madron.

MR. MADRON: Certainly, Your Honor.

THE COURT: Yes, go ahead, sir.

MR. MADRON: Thank you, Your Honor. Again for the record, Jason Madron on behalf of reorganized TCH.

With respect to the continued statements about being drawn into the bankruptcy, again, this is referenced, I most assuredly believe is related to the notice of suggestion of pendency of bankruptcy that was filed down in the Texas state court where certain Tremble family members were plaintiffs in an action against Luminant, EFH, and unnamed EFH subsidiaries.

So I think there is a misapprehension on behalf of the Tremble family that that notice that was filed, which was designed, as Your Honor is aware, to alert the state court of the existence of a bankruptcy and that pursuant to Section 362 of the Bankruptcy Code there is an automatic stay in place that unless Your Honor would have entered an order lifting it, that prevents that lawsuit from going forward.

So I believe that that filing, which clearly did not bring any of the Tremble family members into the bankruptcy case as debtors, is what is being referred to

multiple times this afternoon as being brought into the bankruptcy.

Secondly, Your Honor, with respect to the land issue -- and this all goes back to the partition lawsuits that Luminant brought against, among others, the Tremble family. The partition lawsuit had to do with the land. Luminant prevailed at the trial court level. There was an appeal to a circuit court, state circuit court. And I believe we attached a memorandum opinion to our response. The circuit court affirmed Luminant's win with respect to the partition issue. And the Tremble family sought to take a further appeal, which is not as a matter of right, I am informed by my Texas law colleagues, to the state Supreme Court of Texas. And the State Supreme Court of Texas declined to grant review. As part of that process, the Luminant appellees elected, as is their right, to not file a response to the Tremble family's request for a petition for the Supreme Court to take it up, as is common, you know, in federal court practice often with pro se folks, et cetera.

So with that, Your Honor, I mean, as far as the stay is concerned, Your Honor may recall, you know, if we want to go back into the recesses of these cases, in 2015 the Debtors actually filed a motion before Your Honor seeking entry of an order confirming that the automatic stay did not apply as to the ongoing appeal of the partition suit

because we were the plaintiff in the suit and we were the appellee. And that matter was decided before --

THE COURT: (indiscernible).

MR. MADRON: Yeah. That matter was decided before Your Honor. We submitted evidence, we submitted declarations I believe of a couple of folks with the company. And that was confirmed. And that allowed that appellate process to reach its natural conclusion, which was the Supreme Court of the State of Texas did not take up the matter, and that was the end. It was in the federal courts, you know, your court of last resort is the Supreme Court of the United States. And they deny -- you know up to --

MS. SHAWKEY: Objection, Your Honor.

THE COURT: Ma'am, you don't --

MR. MADRON: And that's kind of the --

THE COURT: Sorry. Ma'am, you don't get to interrupt Mr. Madron. I'm sorry. You will have an opportunity to respond. He didn't interrupt you.

MS. SHAWKEY: Thank you.

MR. MADRON: So, Your Honor, that was the court of last resort. And everything, again, with respect to the partition suits was resolved in favor of Luminant. So this really all harkens back to, you know, we have before the Court at bottom the same issue that we had before the Court two years ago, which is a reassertion of disallowed claims

and seeking a recovery on account of disallowed, alleged secured claims. And outside of the fact that the plan really precludes that in Article 7 and in Article 8 of either the T-side or E-side plans. And we also have the issue that Your Honor has in sum and substance already ruled on this issue and entered not one, but two orders in 2018 concluding that the Tremble family is not entitled to any recovery from these Debtors.

So with that, Your Honor, I will yield -- I'm happy to answer any questions that Your Honor might have for me.

THE COURT: No, I don't have any questions, Mr. Madron. Thank you.

Ms. Shawkey, you wish to be heard?

MS. SHAWKEY: Yes, Your Honor. We also had a second claim that was actually a schedule claim. And the claim was allowed, and it was allowed under the schedule. The claim that's brought up only in my name -- I'm not sure why that was done, but it was. It was Selia Tremble Shawkey, Schedule Number 504270800. And that was of course under the Debtor's number 1411042, Luminant Mining, LLC. It said that it was a scheduled claim and it had like a number under it. And then under remarks it said, "Satisfied claim, minimum distribution." And it was all related to this particular bankruptcy. Okay? Like I said, I was the only

one that for some reason received it up under my name. Okay.

And the other claim that he is talking about, I still object to anything that had to do with why we were in court with Luminant under the land information and all that. Because it had nothing to do with the bankruptcy. Yes, when we did file a suit against them, we did have an amount. We all had an amount. And everybody is I'm sure knowledgeable of that. Okay. And then what does that have to do with the bankruptcy? When they decided not to pursue, then we were put in the bankruptcy by Luminant and Energy Future Holdings and its subsidiaries. This all took place back in, like I said, January 7th, 2015.

And on May 9th, 2016, we had received a letter from the appellate court. And we received information from David Johnson, who was representing them at the time. And it gave all the information. We also received -- like I said, we received all the information for the plan. We had access and we had -- we were able to vote on the plan.

I'm not sure where he's coming from with all of this when they were talking about the petition for the Supreme Court. Like I said, I know that that was in a totally different case. So like I said, I feel like that I'm not sure what he's trying to do and why he's trying to say what he's saying. But it is all on file.

Also when we did have our proof of claim and all the information, all of that, the letters and everything are in the proof -- went in with the proof of claim as evidence of why we were in the bankruptcy, who put us there.

THE COURT: All right. Thank you very much, ma'am.

MS. SHAWKEY: Thank you.

THE COURT: I appreciate everyone appearing today by phone. I am going to take this matter under advisement and issue an order hopefully fairly quickly. We will -- let me just -- I want to make sure it goes to the right people at your family, ma'am. So let me just -- who should we send the order to, Ms. Shawkey, to you?

MS. SHAWKEY: We should send the order to Sharon Tremble-Donaldson.

THE COURT: Okay. And she is on the phone. Yes.

MS. DONALDSON: Yes, I am here, Your Honor.

THE COURT: Can you give me your address and fax number, email and fax number if you have it?

MS. DONALDSON: Sure. Let me know when you're ready.

THE COURT: Go ahead.

MS. DONALDSON: Address is 2010...

THE COURT: 2010...

MS. DONALDSON: Wineberry, W-i-n-e-b-e-r-r-y, one

word, Drive.

THE COURT: Okay.

MS. DONALDSON: That is Katy, K-a-t-y, Texas.

THE COURT: Yes, ma'am.

MS. DONALDSON: 77450. Email address --

THE COURT: And what's your phone number? Or email address, yes.

MS. DONALDSON: Oh, I'm sorry.

THE COURT: Email address. I'm sorry. I misspoke. I need your --

MS. DONALDSON: No problem.

THE COURT: We're going to talk all over each other, aren't we? I apologize. Go ahead.

MS. DONALDSON: All right. It's SharonLJDonaldson@gmail.com.

THE COURT: Okay. I just wanted to make sure --

MS. DONALDSON: And, Your Honor, just -- go ahead. I'm sorry, sir.

THE COURT: No, no. Go ahead, ma'am.

MS. DONALDSON: Just to add to what Selia was making reference to. We all received several packets from David Jackson and both attorneys in reference to the bankruptcy and the fact that we were placed in the bankruptcy. You should actually have copies of that entire document within your records as well. It did come from

Jackson, Sjoberg, McCarthy and Townsend LLP, and they are attorneys in Austin, Texas.

THE COURT: Okay. I think I do, because you attached quite a bit of documents to your motion. So I have all that.

MS. DONALDSON: Right. And there are some additional pages to it as well. So...

THE COURT: Okay. Well, thank you very, very much. It's a little complicated, and we'll try to figure it out as best we can and get you a decision as quickly as we can. Thank you all for appearing today.

MS. DONALDSON: Thank you. We appreciate it.

MS. SHAWKEY: Thank you.

THE COURT: You bet. All right.

MR. MADRON: Thank you, Your Honor.

(Whereupon these proceedings were concluded at 1:39 PM)

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.



Sonya Ledanski Hyde

Veritext Legal Solutions
330 Old Country Road
Suite 300
Mineola, NY 11501

Date: July 13, 2020